This is a suit by the curator of the interdict, Ben Goodson, for his use and benefit seeking to recover $7,380 for injuries alleged to have been received by the interdict when he collided with an automobile driven by defendant, Y.D. Crawford, on paved Highway 165 on the morning of February 25, 1941. Crawford and his liability insurer are made defendants.
The facts regarding the accident were testified to by defendant Crawford who was the only eyewitness to the accident, except the plaintiff, who is an interdict and of course did not testify. They are as follows:
Mr. Crawford is a Deputy Sheriff of Morehouse Parish, Louisiana, and on the morning of the accident was driving his car north on Highway 165. When about one mile south of the Village of Gallion he saw a negro man ahead of him walking north on the right hand side of the pavement. The pavement was eighteen feet wide with a black line in the center of it. The negro man, whose curator is the plaintiff in this suit, was not recognized by Crawford at the time as the interdict he had served papers on a short time before. The time of day was approximately 10:00 A.M., the weather was clear and Crawford had an unobstructed view of the road ahead of him for at least one-half mile. There was no other traffic on the road at the time. Mr. Crawford was traveling at a speed of approximately 40 miles per hour. He did not sound his horn or give any other warning of his approach but guided his car to the left of the black line and attempted to pass. According to his testimony, which is the only testimony as to how the accident occurred, when he was directly opposite the interdict, the latter squatted and lunged into the side of the Crawford car, receiving the injuries he now complains of.
At no time prior to that had the interdict done anything to cause Crawford to believe he was aware of the on-coming car and when he realized a car was behind him he became startled and went in the opposite direction from which he should have gone. The interdict came in contact with the automobile about the handle of the door, which was broken off by the impact. The interdict was not insane but possessed an undeveloped mind which was about equal to that of an average child from four to six years of age.
Mr. Crawford's testimony as to the action of the interdict when he discovered the presence of the car is not entirely clear. He said once that the interdict squatted and lunged into the side of the automobile and at another place in his testimony he said the interdict took two steps and lunged into the side of the car. Crawford placed his car entirely on the left hand side of the road with his right wheels just about the black center line and that the interdict was walking on the extreme right edge of the pavement about one foot from the edge. The pavement was eighteen feet wide and therefore there was approximately eight feet between Crawford's car and the interdict when he suddenly lunged or ran across into the side of the car.
It is on these facts that plaintiff is asking for judgment alleging that Crawford was negligent in not giving warning of his approach by sounding his horn, in not reducing the speed of his car, and by not keeping a proper lookout. He also alleged that defendant knew who the pedestrian was and that he was an interdict and for that reason was required to use more care and precaution in passing him than he would have in passing a normal person.
There is no merit in this last contention for the reason Crawford did not recognize who the pedestrian was until after the accident. He was a full-grown man walking up the highway in a normal manner. Unless it was shown that Crawford recognized or knew that the pedestrian was an interdict, he was not required to use any more care than was required of him in passing a normal man. Jacoby v. Gallagher, 10 La.App. 42, 120 So. 888. *Page 643 
Defendants filed exceptions of no cause and no right of action to the petition which exceptions were overruled. At the conclusion of the testimony offered by plaintiff, defendants again filed these same exceptions, which were overruled.
The first exceptions were correctly overruled. The petition clearly sets out a cause and right of action. Petitioner's allegations that Crawford knew the interdict and was required to use extra care and caution, together with the other allegations of not sounding his horn, excessive speed, failure to keep a proper lookout ahead and failing to reduce the speed of his car when attempting to pass a known interdict, to our mind, clearly sets forth a cause and right of action.
To pass upon the second exceptions would be to pass upon the merits of the case, which we prefer to do. Defendants deny there was any negligence on the part of Crawford and aver that the accident was caused solely by the negligence of the interdict in leaving a place of safety and running into Crawford's car and, in the alternative, they plead the contributory negligence of the interdict by his aforesaid acts and by walking on the right side of the road instead of the left, as provided by Highway Regulatory Act No. 286 of 1938.
The lower court awarded judgment for plaintiff and defendants are prosecuting this appeal.
The lower court predicated its judgment principally upon the fact that Crawford did not sound his horn before attempting to pass the interdict and stated, due to the lack of noise made by the car, coupled with the failure to sound a warning, that the car was very close to the interdict before he heard it and that when he realized the car was so close it startled him and caused him to act unwisely. In other words, the failure of Crawford to sound his horn under the circumstances was negligence which created an emergency and was the proximate cause of the accident. We are of the opinion the lower court was correct.
In this court counsel for defendants take the lower court to task for, as they say, assuming that the car was making very little noise without any oral testimony to that effect. If the courts were not allowed to use their reasoning power and take things into consideration which are of common knowledge to all, we feel certain justice would many times be denied. The automobile involved in this accident was a new Ford and was being operated at a speed of approximately forty miles per hour on a paved highway. It is common knowledge to all that the car did not create much noise and this reasoning is borne out by the fact that the interdict, a man of forty-seven years, did not hear it until it was almost opposite him and there is nothing to indicate that his hearing is in any way affected.
It is our opinion that the mentality of the interdict is unnecessary to be taken into consideration for the purpose of a decision in this case. It is evident by the interdict's act in attempting to get out of the way of the car when he heard it that he knew the danger of it. It makes no difference that he ran the wrong way because of being startled. The fact that he ran the wrong way would indicate to us that he knew a car coming from his rear would be in the same lane of traffic as he was in and that on hearing the car he attempted to make the lane he should have been in. The course he followed under the circumstances could well have been taken by a man of normal faculties.
Section 3, Rule 11, Paragraph (d) of Act No. 286 of 1938, provides in part as follows: "Whenever pedestrians are using the highways, they shall be required to walk on their left hand side of the highway as near as possible to the edge thereof, under penalty of being held and regarded as prima facie at fault and responsible for any consequences of his failure so to do. * * *" This same Section and Paragraph provides in the beginning that: "Upon approaching any pedestrian who is upon the traveled portion of any highway or road, the driver shall sound a warning. * * *"
This same provision was incorporated in Act No. 21 of 1932, Section 3, Rule 11, Paragraph (d), and the Court, in the case of Antoine v. Louisiana Highway Commission, La.App., 188 So. 443, 445, said: "But this duty on the part of the pedestrian must be taken in connection with the duty of the motorist given in the first part of the paragraph to the effect that, `Upon approaching any pedestrian who is upon the traveled portion of any highway or road, the driver shall sound a warning. * * *'"
The rule regarding the duty of the pedestrian to walk on the left side of *Page 644 
the road does not mean that if he does not he can be run down at will by any motorist. The same duty remains on the motorist to exercise the care and precaution circumstances require and by all means to sound a warning on approaching the pedestrian, as required by the Highway Act quoted from above. While it is true in this case that the interdict was violating the law, likewise was defendant Crawford, and in our opinion the proximate cause of the accident was the violation by defendant and that the violation by the interdict was only a remote cause.
If the interdict had been walking on the left side of the road and had been startled by this car of defendant as he was, he might have, and it is very probable he would have, run to the other side and the accident would have occurred any way. There is no way to account for what anyone will do under such circumstances and while suddenly frightened. On the other hand, if Crawford had sounded his horn when a reasonable distance from the interdict, he not only would not have been startled but if he had there would have been sufficient time for either or both to avoid the accident.
The plea of contributory negligence is without merit. As above stated, the interdict did nothing more than any normal person would have done under the circumstances. While there might not have been any direct emergency and the interdict not hurt if he had remained where he was, the action of Crawford in failing to give any warning of his approach created an emergency in the mind of the interdict as would likely have been done in the mind of any normal person.
It clearly was not the fact that the interdict was on the wrong side of the highway in violation of the law that caused the accident for if he had stood there no accident would have occurred. It was the negligence of Crawford in not sounding a warning of his approach that caused the interdict to suddenly run into the car through fright.
We are convinced the judgment of the lower court is correct as to liability.
When the interdict collided with the car he was knocked to the pavement and necessarily received many bruises. His left arm was fractured just above the elbow. He was transported backward and forward to the Clinic several times by defendant Crawford after his arm was set and a brace put on it. The doctor finally decided the fracture was not healing, due to syphilis. He was then moved to the Clinic, an operation performed on his arm and it was fixed with a steel plate and screws. He remained in the Clinic 28 days. At the time of trial, more than a year after the accident, he could bend his arm up approximately 40 degrees and extend it out 40 degrees. There was very limited motion in his arm and a slight chance for improvement. He is unable to dress himself due to the condition of his arm. His other injuries, bruises, etc., have healed. Before the accident, the interdict would assist around the place by driving up the cows and breaking up wood, as well as running errands for the family. He substituted as janitor at the colored Church nearby at times and rang the Church bell. The record discloses he suffered a great deal with his arm. His doctors', hospital and medical bills were $380.
The lower court awarded judgment for plaintiff for $380 for doctors', hospital and medical bill; and $500 for loss of the use of his arm; and $1,500 for pain and suffering. Both plaintiff and defendants complain of the award, one thinks it excessive while the other thinks it inadequate. We are of the opinion the gross amount is just but think the loss of use of the arm award inadequate by $500 and the award for pain and suffering is excessive by $500. Since the total award is the same we see no reason for changing the judgment.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed, with costs.
HAMITER, J., dissents. *Page 645